**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

WARE INDUSTRIES, INC. d/b/a/
MARINO\WARE and WILLIAM A. "CHIP"
GARDNER,

                Plaintiffs,

              v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, *et al.*,

                Defendants.

    :
    :
    :
    :      **OPINION & ORDER**
    :
    :
    :      Civ. No. 18-13895 (WHW)(CLW)
    :
    :
    :

---

**Walls, Senior District Judge**

This matter involves insurance coverage, breach of contract, and fiduciary duty claims by Plaintiffs against Defendants. Currently before the Court is Defendants' motion for summary judgment under Fed. R. Civ. P. 56. Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motion is granted in part, denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter has a complicated history. Immediately relevant to this motion: in 2013, Plaintiff Ware Industries, Inc. ("Ware") was sued in Ohio state court by a competitor in the steel stud manufacturing industry (the "Disparagement Action"). ECF No. 1-2 (Complaint) at ¶ 15; ECF No. 17 (Sum. J. Br.) at 1; ECF No. 16 (Statement of Undisputed Material Fact ("SUMF")) ¶¶ 1-2. The basis for this underlying suit was that Ware, as a founding member of a trade association ("CSSA"), allegedly disparaged a market competitor. SUMF ¶ 3. CSSA was comprised of members Ware, California Expanded Metal Products Company ("CEMCO") and Telling Industries ("Telling"). *Id.* ¶ 2. Plaintiff Chip Gardner ("Gardner"), along with three other

individuals, served on the Board of CSSA as Ware's corporate designee. *Id.* ¶ 17. The named defendants in the Disparagement Action were Ware, CEMCO, Telling, and CSSA. *Id.* ¶ 2.

During the lawsuit, Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") acted as Ware's umbrella liability insurance carrier. *Id.* ¶ 5. The case eventually went to a jury trial, during which Ware, CEMCO, and Telling settled all claims against them. *Id.* ¶¶ 6-7. The only remaining defendant in the lawsuit thereafter was CSSA. *Id.* ¶ 16. The plaintiff then offered to dismiss all claims against CSSA with prejudice and no other conditions required, but the CSSA Board of Directors, which included Gardner, voted unanimously to reject the offer of dismissal. *Id.* ¶¶ 16; 18. The plaintiff then entered a motion to dismiss its remaining claims against CSSA, but the Board again voted unanimously to oppose the motion, which the court denied. *Id.* ¶¶ 19-21. Following closing arguments, the jury returned a $49.5 million verdict against CSSA, yielding a $43 million judgment. *Id.* ¶ 22. CSSA stipulated to the court that it had insufficient tangible assets to satisfy the judgment. However, the court concluded that CSSA held property in the form of potentially viable breach of fiduciary duty claims against the CSSA Board due to the Board's purported misdeeds in turning down plaintiff's offer of dismissal. *Id.* ¶¶ 23-24. The court then appointed a receiver, granting him the authority to bring claims against the CSSA Board based on its "decision to reject [plaintiff']s settlement offer and oppose [plaintiff's] motion to dismiss." *Id.* ¶ 26. In February 2018, the receiver initiated *John J. Reister, Receiver, on behalf of Certified Steel Stud Assoc., Inc. v. Gardner, et. al.*, Case No. CV 2018 02 0442 (Court of Common Please, Butler County, Ohio) (the "Receiver Action"). *Id.* ¶ 27. The Receiver Action alleges that Gardner and the other Directors breached their fiduciary duties to CSSA when they unanimously decided to reject plaintiff's no-cost settlement offer and subsequently opposed plaintiff's motion to dismiss his own claims against CSSA. *Id.* ¶ 29. The Receiver Action seeks

damages based on the CSSA board members' alleged breach of their fiduciary duties. *Id.* ¶¶ 31-32.

Ware's insurance broker tendered the Receiver Action to St. Paul in March 2018, and St. Paul denied coverage in April 2018. *Id.* ¶ 33. On August 14, 2018, Ware and Gardner commenced this action. ECF No. 1 (Notice of Removal) at ¶ 1. Plaintiffs allege three counts: (1) that Defendants' failure to defend Gardner in the Receiver Action constitutes a breach of contract; (2) that in negotiating the Disparagement Action settlement, Defendant St. Paul's "fail[ure] to take into adequate consideration the critical fact that open claims remained against CSSA" constituted a breach of St. Paul's contractual duties to Plaintiffs; and (3) that St. Paul breached its fiduciary duties to Plaintiffs by virtue of the actions described in Count Two. Compl. ¶¶ 29-39. Plaintiffs seek, among other requests, a declaration that Defendants are required to provide or pay (including reimbursement for already-incurred costs) for Plaintiffs' defense in the Receiver Action. On December 7, 2018, Defendants moved for judgment to dismiss the Complaint in its entirety. ECF No. 14.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### Motion to Strike

The Court first reviews Defendant St. Paul's motion to strike portions of both Plaintiff Gardner's Declaration and Plaintiffs' Responsive Statement of Material Facts. *See* ECF No. 35. "[M]otions to strike are disfavored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Choy v. Comcast Cable Commc'ns, Inc.*, No. CIV. 08-4092 RBK/AMD, 2012 WL 253382, at *11 (D.N.J. Jan. 26, 2012), *aff'd sub nom. Choy v. Comcast Cable Commc'ns, LLC*, 629 F. App'x 362 (3d Cir. 2015) (internal quotations omitted). Defendant argues that Gardner's Declaration contains statements "as to which [Gardner] lacks personal knowledge" or are "inadmissible hearsay unaccompanied by evidence that could be

4

presented in an admissible form." ECF No. 35-1 at 1. St. Paul also argues that Plaintiffs'

Responsive SUMF "addressed [] information that is immaterial." *Id.*

Local Rule 7.2 states that declarations "shall be restricted to statements of fact within the

personal knowledge of the signatory." Courts have "not hesitated to enforce the directives of this

rule." *Kona Ice, Inc. v. Gonzalez*, No. CV177757ESSCM, 2019 WL 161506, at *2 (D.N.J. Jan. 9,

2019). "Statements which constitute the opinion or belief of the affiant, or matters outside the

personal knowledge of the affiant, are not 'competent' evidence." *Cohen v. Kurtzman*, 45 F.

Supp. 2d 423, 432 (D.N.J. 1999).

St. Paul first asks the Court to strike a portion of ¶ 10 of the Gardner Declaration wherein

Gardner states that "St. Paul took complete control over the settlement discussions with" the

plaintiff's counsel in the Disparagement Action, Gardner Decl. (ECF No. 30-4) at ¶ 10, and a

portion of ¶ 21 wherein Gardner states, "I believe that St. Paul, which was controlling the

defense, prepared or required the language contained in the Settlement Agreement," *id.* at ¶ 21.

St. Paul argues that Gardner provides no basis "upon which to conclude he has personal

knowledge concerning St. Paul's purported 'complete control' of discussions relating to

settlement." ECF No. 35-1 at 4. Gardner responds that as President/CEO of Ware and a Director

of CSSA, he is presumed to have knowledge of the above statements and that St. Paul has

offered no reason to doubt his knowledge. ECF No. 47 at 3-5. The Court agrees. Without

discovery, it is not for the Court to decide what is or is not within Plaintiff's personal knowledge

given both his role at Ware/CSSA and his involvement in the Disparagement Action.

St. Paul next requests the Court strike portions of ¶¶ 4, 6, 7, 30, 32, 33, and 34, arguing

that they "[c]onstitute inadmissible hearsay and fail to attach any documents demonstrating that

the fact could be supported by admissible evidence." ECF No. 35-1 at 6. Whether these

statements are hearsay or not, the Third Circuit has held repeatedly that "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence…in a form that would be admissible at trial." *McCann v. Astrue*, 293 F. App'x 848, 851 (3d Cir. 2008). Gardner asserts that "all of the information contained in those paragraphs can be properly submitted to the court at trial through testimony or through the production of relevant documents." ECF No. 47 at 6. Again, the Court at this stage cannot second guess Plaintiff's reasonable contention as to his own evidence.

St. Paul also moves to strike portions of Plaintiffs' Counterstatement to Defendants' SUMF. ECF No. 35-1 at 7. Local Rule 56.1 requires a party responding to a summary judgment motion submit a counterstatement to the moving party's SUMF. St. Paul first contends that ¶¶ 5, 8, 9(e), and 17 should be stricken because they rely on portions of the Gardner Declaration objected to above. For the reasons expressed, the Court will deny these derivative requests to strike.

Finally, St. Paul moves to strike over fifty paragraphs in Plaintiffs' counterstatement as "immaterial." ECF No. 35-1. The Court need not comb over every individual statement made in the counterstatement for materiality. Local Rule 56.1 requires the non-moving party to "indicat[e] agreement or disagreement [with each paragraph of the SUMF] and, if not agreed, stat[e] each material fact in dispute and cit[e] to the affidavits and other documents submitted in connection with the motion." If any of these statements contain immaterial information, the Court will simply ignore it. "Because the Court finds that Defendant's Motion to Strike numerous other paragraphs in Plaintiff's Counterstatement of Undisputed Material Fact are not essential to the resolution of Defendant's motion for summary judgment…the Court denies the remainder of Defendant's motion." *Choy*, 2012 WL 253382, at *11.

**Motion for Summary Judgment**

New Jersey law applies to this matter. In New Jersey, insurance contracts are determined by looking at the place that "the parties understood ... to be the principal location of the insured risk." *Borden-Perlman Ins. Agency, Inc. v. Utica Mut. Ins. Co.*, No. A-1313-14T3, 2016 WL 1368589, at *5 (N.J. Super. Ct. App. Div. Apr. 7, 2016). Both parties agree—and a review of the Umbrella Policies confirms—this to be New Jersey.

This motion deals with the contractual and fiduciary relationship between St. Paul and Plaintiffs. St. Paul issued to Ware a series of umbrella liability policies (the "Umbrella Policies") in effect for annual periods ending in July 2015. SUMF ¶ 34. Generally, "[a]n insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy. The duty to defend is triggered by the filing of a complaint alleging a covered claim. Consequently, when the complaint raises allegations that fall within a risk covered by the insurance contract, the insurer has a duty to defend." *Abouzaid v. Mansard Gardens Assocs., LLC*, 207 N.J. 67, 79 (2011) (internal citations omitted). The Umbrella Policies ensured that Plaintiffs would be covered for any "Advertising Injury that is caused by an Occurrence committed during the Policy Period." *See* ECF No. 15 at Ex. I. An "occurrence" is defined as either "an offense arising out of your business that results in Personal Injury" or "an offense committed in the course of advertising your goods, products and services that results in Advertising Injury." SUMF ¶ 36. The Policy Period is defined as July 1, 2014 to July 1, 2015. *See* ECF No. 15 at Ex. I, pg. 2.

> A. *Does the Receiver Action Concern the Commission of a Covered Offense During the Effective Periods of the Umbrella Policies?*

St. Paul contends that the Umbrella Policies afford no coverage for the Receiver Action because the Policies extend only to injures caused by an "occurrence" that is "committed during

the Policy Period." St. Paul posits that "the suit for which coverage is sought must seek damages because of [an injury] that was committed during the relevant policy's effective period," Sum. J. Br. at 21-22, and Plaintiffs cannot demonstrate this prerequisite. None of the Umbrella Policies were in effect in November 2015—when the alleged breach of fiduciary duties by the CSSA Directors took place—as the final policy had expired in July 2015.

Plaintiffs contend that whether the Receiver Action is a separate proceeding from (as opposed to a continuation of) the Disparagement Action is a "factual issue," and discovery is needed to determine if this is the case. *See* Resp. Br. at 24-25. "Contract interpretation is usually a question of law in New Jersey." *Tauriello v. Twp. of Edison*, 288 F. App'x 825, 828 (3d Cir. 2008). "New Jersey has well-settled principles of insurance contract interpretation:

> The principles of insurance contract interpretation are well settled: (1) the interpretation of an insurance contract is a question of law, (2) when interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms, (3) when the terms of the contract are clear and ambiguous, the court must enforce the contract as it is written, and the court cannot make a better contract for the parties than the one that they themselves agreed to, (4) where an ambiguity exists, it must be resolved against the insurer, (5) if the controlling language of the policy will support two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage will be applied, but (6) an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants, and a genuine ambiguity exists when the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'"

*Hobbs v. US Coastal Ins. Co.*, No. CV 17-3673, 2018 WL 2332254, at *2 (D.N.J. May 23, 2018) (citing *State Nat. Ins. Co. v. Cty. of Camden*, 10 F. Supp. 3d 568, 574–75 (D.N.J. 2014)). In sum, "[t]he interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation," and "[t]he interpretation of the terms of a contract are decided by the court as a

matter of law unless the meaning is both unclear and dependent on conflicting testimony."

*Celanese Ltd. v. Essex Cty. Improvement Auth.*, 404 N.J. Super. 514, 528 (App. Div. 2009).

There is no ambiguous phrasing in the Policies such that "the average policyholder cannot make out the boundaries of coverage." *Hobbs*, 2018 WL 2332254, at *2. The settlement discussions in the Disparagement Action took place during November 2015, outside the defined Policy Period which had ended four months earlier. Plaintiffs ask that the Court find there to be a factual dispute as to whether the Receiver Action is simply an extension of the already-covered Disparagement Action, but they give no indication as to what relevant discovery could guide the Court's analysis that it does not already have. The basic facts concerning the Receiver Action are agreed to by all. *See* SUMF ¶¶ 23-33. The language of the Umbrella Policies makes clear that the intention of the parties was not to cover fiduciary duty claims against the CSSA Board of Directors arising outside the Policy Period, but to cover personal and advertising injury claims arising inside the Policy Period. While it is true that (1) the Receiver's fiduciary duty allegations arose during St. Paul's defense of advertising injury claims against Plaintiffs, and (2) Plaintiffs claim St. Paul breached its own contractual and fiduciary obligations to them during that defense, these facts are merely added detail that do not change the underlying contractual analysis. The Receiver Action may seek to collect on the underlying Disparagement Action judgment, but it does so based on actions by the insured that are not covered by the Policy Period. If not for the CSSA Board twice refusing the offer of dismissal during the Disparagement Action—acts not covered by the terms of the Umbrella Policies—there would be no Receiver Action. The Court finds that St. Paul is under no continuing obligation to defend or provide for Plaintiffs in the Receiver Action.

### B. Did Defendants Breach Cognizable Duties to Plaintiffs?

St. Paul seeks to dismiss Counts Two and Three of the Complaint. In Count Two, Plaintiffs allege that "St. Paul, in negotiating the Release, failed to take into adequate consideration the critical fact that open claims remained against CSSA, and, as a result, that Gardner, and by extension his employer Ware, remain exposed." Compl. ¶ 35. Plaintiffs allege this "failure to negotiate a proper Release is a breach of St. Paul's contractual duties to Plaintiffs." *Id.* ¶ 37. Specifically, Plaintiffs argue that St. Paul's lack of due diligence may have risen to the level of bad faith. Resp. Br. at 19-20. In Count Three, Plaintiffs assert a breach of fiduciary duty claim for the same conduct, alleging that St. Paul "failed to negotiate a clear, expansive and proper release." *Id.* ¶ 39.

Plaintiffs attribute the same underlying action—St. Paul's failure to release Gardner from the settlement agreement—to both the breach of contract and fiduciary duty claims. St. Paul contends that the law demanded no such duty from it on either a contractual or fiduciary level, and therefore it cannot be held liable on either count. Sum. J. Br. at 31-32. The parties have briefed the contractual and fiduciary duties as overlapping such that they rise and fall together, and the case law has treated these kinds of claims as such. *See, e.g., Ellington v. Cure Auto Ins.*, No. A-2470-16T4, 2017 WL 3081717, at *6 (N.J. Super. Ct. App. Div. July 20, 2017), *appeal denied*, 232 N.J. 77 (2018). The Court will jointly analyze Counts Two and Three.

In a breach of contract claim, "a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained damages." *EnviroFinance Grp., LLC v. Envtl. Barrier Co.*, LLC, 440 N.J. Super. 325, 345 (App. Div. 2015). For a breach of fiduciary duty claim, the elements are: "(1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty

imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach." *SalandStacy Corp. v. Freeney*, No. CIV.A. 11-3439 JLL, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012). Plaintiffs claim St. Paul owed them a contractual and fiduciary obligation to act with reasonable diligence during settlement negotiations, and that St. Paul failed to do so. Resp. Br. at 17; 19-21. St. Paul contends that no duty exists in New Jersey to protect all insured parties when negotiating a settlement agreement. Reply Br. at 12-14.

New Jersey law is clear that "the insurer owes a duty to its insured to act diligently and in good faith in effecting settlements." *Liguori v. Allstate Ins. Co.*, 76 N.J. Super. 204, 211 (Ch. Div. 1962). "[A]lthough the insurer has the exclusive right to control settlement, that right imposes a corresponding duty raised by law to observe ordinary diligence in performing that power when in the exercise of it." *Am. Home Assur. Co. v. Hermann's Warehouse Corp.*, 117 N.J. 1, 10 (1989) (internal quotations and brackets omitted) (quoting *Waters v. American Casualty Co.*, 261 Ala. 252, 260-61 (1953)). The Supreme Court of New Jersey has described this as "the most urgent duty to act in good faith and with diligence in attempting to arrange a possible settlement." *Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.*, 65 N.J. 474, 492 (1974). This "ordinary diligence" is "a duty on [the insurer's] part to use ordinary care to ascertain the facts on which its performance depends if he has not already done so." *Waters*, 261 Ala. at 260-61 (1953). This is not just a contractual duty, but also a "fiduciary duty...to act in good faith in attempting to settle the claim. This duty [is] of particular importance [when] the insured [i]s personally liable for any damages in excess of the policy limit." *Taddei v. State Farm Indem. Co.*, 401 N.J. Super. 449, 459, (App. Div. 2008) (internal citations omitted). "[A]n insurer's breach of good faith may be found upon a showing that it has breached its fiduciary obligations,

regardless of any malice or will." *Badiali v. New Jersey Mfrs. Ins. Grp.*, 220 N.J. 544, 554 (2015).

Defendants have not shown the absence of a genuine dispute as to the material fact of whether they complied with their contractual and fiduciary obligation to use ordinary care during settlement negotiations. While St. Paul focuses on the existence (or lack thereof) of a duty to protect all insureds, Plaintiffs also contend that St. Paul "knew or should have known that Ware was still exposed as an indemnitor in the event of any claims by [the Disparagement Action plaintiff] against Gardner," and that this oversight by St. Paul may have constituted a lack of diligence as detailed in *Am. Home Assur. Co.*, 117 N.J. 1, 10 (1989). *See* Resp. Br. at 17; 19-21. Plaintiffs suggest that without basic discovery, including the "production of the underlying claim file and a deposition of a corporate designee," this is a fact that cannot be decided by the Court at this stage. *Id.* at 21. The Court agrees. "[A]n assessment of the reasonableness of an insurer's settlement negotiations in the underlying action will likely hinge upon the credibility of fact witnesses, as well as expert testimony as to what went wrong on the settlement front and why." *Penn Nat'l Ins. Co. v. Grp. C Commc'ns, Inc.*, No. A-0754-15T1, 2018 WL 3625424, at *9 (N.J. Super. Ct. App. Div. July 31, 2018) (reversing trial court's dismissal of plaintiff's "bad faith failure to settle claim" against insurer). *See also Bowers v. Camden Fire Ins. Ass'n*, 51 N.J. 62, 73 (1968) ("If the evidence is such as to create any reasonable basis for disagreement among reasonable minds as to whether the insurer discharged its duty of good faith, the question must be submitted to the jury or fact finder for determination"); *Tannerfors v. Am. Fid. Fire Ins. Co.*, 397 F. Supp. 141, 158 (D.N.J. 1975), *aff'd*, 535 F.2d 1247 (3d Cir. 1976) ("The determination of whether a carrier has acted in good faith and dealt fairly, honestly and candidly with its insured in the handling of a claim is guided by an examination of the particular factual circumstances of

each case, subject to certain basic principles"). Without discovery into St. Paul's knowledge and course of conduct when negotiating the settlement agreement (and its decision to leave Gardner out), "[p]rudence dictates that these pivotal questions of reasonableness and bad faith be decided in this case after a full-blown evidentiary presentation before the factfinder. By no means [is this Court] saying that summary judgment in favor of an insured is never appropriate in a bad faith case, but simply that there is enough proof on both sides of the ledger here to warrant a plenary disposition." *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 571 (2011). Defendant's motion for summary judgment as to Counts Two and Three of the Complaint is denied.

## CONCLUSION

First, Defendants' Motion to Strike (ECF No. 35) is hereby DENIED. Second, because the Umbrella Policies do not cover the time period or actions upon which the Receiver Action is based, it is hereby ORDERED that Defendants are under no obligation to defend or financially provide for Plaintiffs in the Receiver Action, and judgment is entered in favor of Defendants as to Count One of the Complaint, which is dismissed. However, because a genuine dispute exists as to St. Paul's compliance with its contractual and fiduciary duties in settling the Disparagement Action, Defendants' motion for summary judgment as to Counts Two and Three of the Complaint is hereby DENIED.

DATE: 2 April 2019

_____
William H. Walls
Senior United States District Court Judge