NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARE INDUSTRIES, INC. d/b/a/ MARINO\WARE and WILLIAM A. "CHIP" GARDNER,<br><br>Plaintiffs,<br><br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | **OPINION & ORDER**<br><br>Civ. No. 18-13895 (WHW)(CLW) |

**Walls, Senior District Judge**

This matter involves insurance coverage, breach of contract, and fiduciary duty claims by Plaintiffs against Defendants. Currently before the Court is Defendants' motion for reconsideration pursuant to Local Rule 7.1(i). Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter has a complicated history that was detailed in full in the Opinion & Order on summary judgment at issue. *See Ware Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CV1813895WHWCLW, 2019 WL 1470129, at *1-*2 (D.N.J. Apr. 3, 2019) (ECF No. 49). Immediately relevant to this motion: in 2013, Plaintiff Ware Industries, Inc. ("Ware") was sued in Ohio state court by a competitor in the steel stud manufacturing industry (the "Disparagement Action"). ECF No. 1-2 (Complaint) at ¶ 15; ECF No. 17 (Sum. J. Br.) at 1; ECF No. 16 (Statement of Undisputed Material Fact ("SUMF") ¶¶ 1-2. The basis for this underlying suit was that a trade association ("CSSA") disparaged a market competitor. *Id.* ¶ 3. Ware was a founding member of CSSA, and Ware's C.E.O., Plaintiff Chip Gardner ("Gardner"), served on CSSA's

1

board. *See generally id.* During the lawsuit, Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") acted as Ware's umbrella liability insurance carrier. *Id.* ¶ 5. The case eventually went to a jury trial, during which Ware settled all claims against it. *Id.* ¶¶ 6-7. The only remaining defendant in the lawsuit thereafter was CSSA. *Id.* ¶ 16. The plaintiff offered to dismiss all claims against CSSA with prejudice, but the CSSA Board of Directors voted unanimously to reject the offer of dismissal. *Id.* ¶¶ 16; 18. Following closing arguments, the jury returned a $49.5 million verdict against CSSA, yielding a $43 million judgment. *Id.* ¶ 22. Upon request from the plaintiff in the matter, the court appointed a receiver to pursue potential breach of fiduciary duty claims against the CSSA Board based on its "decision to reject [plaintiff']s settlement offer and oppose [plaintiff's] motion to dismiss." *Id.* ¶ 26. In February 2018, the receiver initiated *John J. Reister, Receiver, on behalf of Certified Steel Stud Assoc., Inc. v. Gardner, et. al.*, Case No. CV 2018 02 0442 (Court of Common Please, Butler County, Ohio) (the "Receiver Action"). *Id.* ¶ 27. Plaintiffs in this case originally alleged three counts: (1) that Defendants' failure to defend Gardner in the Receiver Action constitutes a breach of contract; (2) that in negotiating the Disparagement Action settlement, Defendant St. Paul's "fail[ure] to take into adequate consideration the critical fact that open claims remained against CSSA" constituted a breach of St. Paul's contractual duties to Plaintiffs; and (3) that St. Paul breached its fiduciary duties to Plaintiffs by virtue of the actions described in Count Two. Compl. ¶¶ 29-39. On April 17, 2019, this Court dismissed Count One, ordering that "Defendants are under no obligation to defend or financially provide for Plaintiffs in the Receiver Action." *Ware Indus.*, 2019 WL 1470129, at *6. However, Counts Two and Three of the Complaint remained. *Id.* Defendant St. Paul now asks the Court to reconsider its decision regarding Counts Two and Three and to dismiss those as well. ECF No. 50 ("Mot. Br.").

## STANDARD OF REVIEW

Local Civil Rule 7.1(i) allows a party to seek a motion for reconsideration within 14 days after entry of the judgment, and directs the party seeking reconsideration to submit "a brief setting forth the matter or controlling decisions which the party believes the Judge. . . has overlooked." The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised before the entry of judgment. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003). Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention but not considered. *Yurecko v. Port Auth. Trans-Hudson Corp.* 279 F. Supp. 2d 606, 608-609 (D.N.J. 2003).

## DISCUSSION

St. Paul claims that the Court made two clear errors in its April 3rd, 2019 Opinion & Order, one factual and one legal. The Court considers each in turn.

*Scope of the Subject Release*

St. Paul contends that the Court mistakenly believed that the settlement agreement in the underlying Disparagement Action did not include Gardner, and that this mistake changes the underlying contractual and fiduciary breach analysis in an outcome-determinative manner. *See* Mot. Br. at 5-6. St. Paul points specifically to portions of the Opinion wherein the Court describes "St. Paul's failure to release Gardner from the settlement agreement," as well as the "decision to leave Gardner out." *Ware Indus.*, 2019 WL 1470129, at *2-6.

The Court was not mistaken. Plaintiffs stressed St. Paul's "failure to negotiate a proper Release" as the underlying basis of their claims on Counts Two and Three. Compl. ¶ 37. They describe this decision as St. Paul's "fail[ure] to protect Gardner…from all future claims related to the Disparagement Action." ECF No. 30 at 18. This could have been done, according to Plaintiffs, by "obtain[ing] an exculpatory clause…eliminating all liability of Gardner…in connection with the Disparagement Action." *Id.* at 20. Plaintiffs contend this action "left Gardner exposed to future claims in the litigation." *Id.* at 23. When the Court spoke of the "failure to release Gardner," it was specifically referring to the context put forward by Plaintiffs, *i.e.* that Gardner was not *fully* released from liability because St. Paul "failed to negotiate a clear, expansive and proper release." *Ware Indus.*, 2019 WL 1470129, at *5. As Plaintiffs state, "Ware and Gardner never argued about whether Gardner was actually released, but instead focused on the **scope** of the release and whether St. Paul properly met its fiduciary duty in negotiating the scope of the release, which is exactly what the Court did as well." Resp. Br. at 54. The Court

agrees with St. Paul that "Gardner was in fact released by [the plaintiff in the underlying Disparagement Action] with respect to the claims asserted against Ware." Mot. Br. at 5. But the question is whether the alleged lack of completeness of the relief constituted a breach of St. Paul's fiduciary and contractual duties. That question remains. A motion for reconsideration will not be granted when a party, in disputing the Court's understanding of a factual issue, "seize[s] on a single sentence in [an Opinion & Order], ignoring the obvious context and the bulk of the opinion, to press the argument." *Whimsicality, Inc. v. Rubie's Costume Co.*, No. CV-89-1720 (RJD), 1998 WL 178856, at *1 (E.D.N.Y. Feb. 24, 1998). The Court's factual record stands.

### *Legal Argument*

St. Paul next contends the Court misunderstood its legal argument. It states the Court did not focus on its argument that "no New Jersey law obligates an insurer settling an underlying suit against its policyholder to secure a release beyond the claims in suit, particularly not a release of future claims premised upon post-settlement, post-policy-period conduct different than that at issue in the suit being settled." Mot. Br. at 6. St. Paul implores the Court to deal with its contention that "no New Jersey law entitles *any* insured to the type of broad-sweeping release Plaintiffs claim St. Paul should have secured for them – notwithstanding that St. Paul obtained a release for *all* of its insureds, including Gardner." *Id.* at 8.

St. Paul wants the Court to focus on this particular legal argument, which both parties admit may be one of first impression in the Circuit. But St. Paul ignores the Court's analysis in its Opinion that "Defendants have not shown the absence of a genuine dispute as to the material fact of whether they complied with their contractual and fiduciary obligation to use ordinary care during settlement negotiations." *Ware Indus.*, 2019 WL 1470129, at *6. Ordinary care may not be a novel legal question of first impression, but it is still one that requires discovery. The Third

Circuit has made clear that "[b]ecause summary judgment can be supported or defeated by citing a developed record, courts must give the parties 'adequate time for discovery.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Courts in this District have repeatedly found summary judgment motions before discovery to be premature. *See, e.g., Scholar Intelligent Sols., Inc. v. New Jersey Eye Ctr., P.A.*, No. CIV.A. 13-642 SRC, 2013 WL 2455959, at *2 (D.N.J. June 5, 2013) ("Defendants have moved for summary judgment before discovery has even begun. As such, the motion is premature."). As the Court stated in its Opinion, "Plaintiffs [] contend that St. Paul knew or should have known that Ware was still exposed as an indemnitor in the event of any claims by [the Disparagement Action plaintiff] against Gardner, and that this oversight by St. Paul may have constituted a lack of diligence." *Ware Indus.*, 2019 WL 1470129, at *6. That is still the case, and so discovery is required.

## CONCLUSION

Because St. Paul has not met its burden to demonstrate a clear error of law, the Motion for Reconsideration (ECF No. 50) is DENIED. Discovery will move forward as contemplated in the Court's Opinion & Order dated April 3, 2019.

DATE: 5 June 2019

William H. Walls
Senior United States District Court Judge